# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-61167-CIV-ALTONAGA/Strauss

**BRUNA ARENALES-
SALGADO-DE-OLIVEIRA**, *et al.*,

        Plaintiffs,

v.

**UR JADDOU**, *et al.*,

        Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendants, Ur Jaddou, Director, United States

Citizenship and Immigration Services ("USCIS"), and Antony Blinken, Secretary, United States

Department of State's ("DOS['s]") (together, the "Government['s]") Motion to Dismiss First

Amended Complaint [ECF No. 32], filed on September 29, 2023.  Plaintiffs filed a Response [ECF

No. 34]; to which the Government filed a Reply [ECF No. 34].  The Court has carefully considered

the First Amended Complaint [ECF No. 22] ("FAC"), the parties' written submissions, and

applicable law.  For the following reasons, the Motion is granted in part and denied in part.

## I.  BACKGROUND

This case involves claims related to the Government's handling of Plaintiffs' visa

applications.  (*See generally id.*).  Plaintiffs are 23 survivors[1] of the February 14, 2018 Marjory

---

[1] The Plaintiffs are Bruna Arenales-Salgado-de-Oliveira, Kaiqui Cardoso-Moreira, Lucca Carvalho-
Assuncao, Henrique Coriliano-Yasbek, Matheus Correa, Vitor Cunha-de-Castro, Caio De-Albuquerque-
Sobral, Carolina Freitas-Franco, Julia Gagliardi-Soares, Liliana Granada, Giovanna Mancini-Silva, Juan
Felipe Munera, Roberto Noschese, Gabriel Oliveira-Cordeiro, Victoria Robledo-Pavliuk-Silva, Ana
Romero, Joao Vitor Thompson-Dos-Santos, Pedro Martins-Bernabe, Gabriel Cruz-Carvalho, Giovanna
Penchel-Alvarenga-Balthar-Dos-Santos, and Ana Cristina Bracho-Portas.  (*See* FAC ¶¶ 144–308).

Stoneman Douglas High School massacre and 50 of their immediate family members.[2]  (*See id.* ¶¶ 138–39).  At the massacre, which at the time of writing is "the deadliest mass shooting at a high school in United States history," a former student shot and killed 17 students and staff, injured 17 more, and fired at fleeing students.  (*Id.* 4–5).

After the shooting, Plaintiffs, none of whom is a U.S. citizen, applied for U visas, a special type of visa available in some circumstances to victims of qualifying crimes and their immediate family members.  (*See id.* 6).  By this action, Plaintiffs seek a court order requiring USCIS and DOS to take agency action related to Plaintiffs' U visa applications.  (*See generally id.*).  Before providing additional factual background and explaining Plaintiffs' claims in more detail, the Court provides a backdrop of the U-visa petition procedure and the overarching statutory and regulatory scheme.

**A. Statutory and Regulatory Background**

The U visa program was created as part of the Victims of Trafficking and Violence Protection Act of 2000.  Its purpose was to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases[.]"  Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(2)(A), 114 Stat. 1464, 1533 (2000) (alteration added).  To

---

[2] The immediate family members include Alessandra Arenales-Salgado-de-Oliveira, Murilo Arenales-Salgado-de-Oliveira, Luiz Waldemar Salgado-de-Oliveira, Nadia Cardoso-De-Miranda-Moreira, Sandro dos-Santos-Moreira, Cauan Cardoso-Moreira, Junia Gomes-de-Carvalho-de-Assuncao, Rodrigo Adler-de-Assuncao, P.C.A., Heliani Valentina Coriliano, Cesar Roberto Yasbek, Adelaide Correa, Edmar Correa, G.C., Manuela Cunha-da-Castro, J.P.C.C.A, Daniela Lemos-da-Cunha, Marco Antonio Cassiano-Alves, Erika Freitas-Franco, Flavia Gagliardi-Soares, G.G.S., Ricardo Almeida-da-Rocha-Filho, Jose Hoyos, Cinthya Cassab-Mancini-da-Silva, Santiago Munera-Giraldo, Miryam Janneth Giraldo-Uribe, Juan David Munera-Patino, J.M.G., S.M.M., J.D.M.J., Adriana Noschese, Renato Noschese, Maria do-Carmo-de-Oliveira-Cordeiro, Alan Pereira-Cordeiro, Maricelma Robledo-Pavliuk-Silva, Marcos Evandro Pavliuk-Silva, Julio Cesar Silveira, Sandra Milena Munera-Patino, Mariluza Favorett-Thompson-dos-Santos, Fabio Dos-Santos, Pedro Henrique Thompson-Dos-Santos, Hilton Souza Bernabe, Simone Sintia Mendes Martins, Manuela Martins Bernabe, Mairon Rego Carvalho, Ana Paula Cruz Carvalho, G.C.C., G.C.C., Herik Balthar Ribeiro Dos Santos, Giselle Penchel Alvarenga Dos Santos, Maria del Pilar Portas, and Maria Fernanda Bracho-Portas.  (*See* FAC ¶¶ 144–308).

that end, U visas are available to aliens who are victims of qualifying crimes and assist law enforcement in investigating the subject criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U).[3] If USCIS approves a U-visa petition, the petitioner will receive lawful nonimmigrant status and employment authorization for up to four years. *See id.* §§ 1184(p)(3)(B), (p)(6); 8 C.F.R. § 274a.12(a)(19). The statute also allows qualifying immediate family members of the principal applicant to apply for derivative U visas. *See* 8 U.S.C. § 1101(a)(15)(U)(ii) (describing qualifying family members).

USCIS promulgated regulations regarding U-visa applications. Applicants seeking U-1 nonimmigrant status must submit a "Form I-918 . . . and initial evidence to USCIS in accordance with" certain instructions. 8 C.F.R. § 214.14(c)(1) (alteration added). Then, "[i]f USCIS determines that the petitioner has met the requirements . . . , USCIS will approve Form I-918." *Id.* § 214.14(c)(5)(i) (alterations added). "For a petitioner who is within the United States, USCIS also will concurrently grant U-1 nonimmigrant status," which provides employment authorization

---

[3] The statute provides:

> (15) The term "immigrant" means . . . (U)(i) . . . an alien who files a petition for status under this subparagraph, if the Secretary of Homeland Security determines that —
>
> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);
>
> (II) the alien . . . possesses information concerning criminal activity described in clause (iii);
>
> (III) the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and
>
> (IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States[.]

8 U.S.C. § 1101(a)(15)(U) (alterations added).

documents ("EADs") to petitioners.  *Id.* §§ 214.14(c)(5)(i), (7); *see* 8 U.S.C. § 1184(p)(3)(B).

Similar requirements and procedures apply to derivative applicants.

Congress imposed limits on the number of principal alien applicants who may be issued U

visas per fiscal year, setting the cap at 10,000.  *See id.* § 1184(p)(2).  Anticipating the statutory cap

would be met soon after enactment, USCIS created a regulatory waiting list process.  *See* 8 C.F.R.

§ 214.14(d)(2); New Classification for Victims of Criminal Activity; Eligibility for "U"

Nonimmigrant Status, 72 Fed. Reg. 53,014, 53,027 (Sept. 17, 2007).  If USCIS determines a U-

visa petition is approvable but unavailable due to the statutory cap, the petitioner must be placed

on the waiting list.  *See* 8 C.F.R. § 214.14(d)(2).

Petitioners can receive some interim benefits while they await adjudication of their visa

applications.  Congress authorized USCIS to "grant work authorization to any alien who has a

pending, *bona fide* application for nonimmigrant status under section 1101(a) (15)(U) of this title."

8 U.S.C. § 1184(p)(6).  On June 14, 2021, USCIS issued a "policy alert" explaining that it would

undertake a *bona fide* determination ("BFD") process for U-visa petitions, "[d]ue to. . . a growing

backlog [of petitions] awaiting placement on the waiting list or final adjudication[.]"  USCIS,

Policy Alert: *Bona Fide* Determination Process for Victims of Qualifying Crimes, and

Employment Authorization and Deferred Action for Certain Petitioners (June 14, 2021),

uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf

(alterations added) (hereinafter, "BFD Policy Alert").  Under the process, USCIS will conduct a

BFD "and provide [employment authorization documents] and deferred action to noncitizens with

pending, *bona fide* petitions who meet certain discretionary standards."  *Id.* (alteration added).

To be sure, a BFD and waiting list placement are not equivalent.  A BFD allows U-visa

petitioners awaiting placement on a waiting list to receive benefits; once placed on the waiting list,

"USCIS will grant deferred action or parole" to the petitioners and their qualifying family members while they remain on the waiting list.  8 C.F.R. § 214.14(d)(2).  The principal distinction between a BFD and waiting list placement is parole, which the BFD Policy Alert makes no mention of.  *See generally* BFD Policy Alert.

Deferred action and parole differ, although their effects on noncitizens are similar. Deferred action is a discretionary "act of administrative convenience to the government that gives some cases lower priority" for removal.  8 C.F.R. § 274a.12(c)(14).  By contrast, parole[4] "permit[s] a non-citizen to enter the United States temporarily while investigation of eligibility for admission takes place."  *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005) (alteration added; footnote call number omitted).  "Parole" is authorized by a separate statute that provides:

> [t]he Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (alterations added).[5]

Both deferred action and parole prevent the noncitizen from accruing unlawful presence under section 212(a)(9)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B).  *See*

---

[4] There are several different types of parole: port of entry parole; advance parole; deferred inspection parole; humanitarian parole; public interest parole; overseas parole, and others.  *See Succar*, 394 F.3d at 15 n.7 (citations omitted) (explaining the different types of parole and their purposes).

[5] "Admitted aliens" are individuals who have presented themselves for inspection by an immigration officer and who have been allowed to enter the country, 8 U.S.C. § 1101(a)(13)(A), whereas "[p]aroled aliens" are otherwise inadmissible aliens who are given permission by the Attorney General to enter temporarily, *id.* § 1182(d)(5)(A) (alteration added).  Parolees possess different rights than those "admitted" into the United States.  *See generally Samirah v. Holder*, 627 F.3d 652, 655 (7th Cir. 2010).

8 C.F.R. § 214.14(d)(3).  Relevant here, parole allows petitioners "to leave and re-enter the United States[,]" thereby reuniting many petitioners with their overseas family members.  Citizenship & Immigr. Servs. Ombudsman, Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad (June 16, 2016), https://www.dhs.gov/sites/default/files/publications/cisomb-u-parole-recommendation-061616_0.pdf (alteration added) (hereinafter, "Ombudsman Parole Recommendation").

Putting the whole process together, "the petition for a U visa proceeds through four stages": (1) application is filed pending review, during which time the petitioner is vulnerable to removal but may be granted a discretionary stay of removal; (2) a petition is deemed *bona fide* but not yet adjudicated, at which time the petitioner may receive discretionary EADs and deferred action; (3) petitioner is deemed eligible for a U visa and is consequently placed on the waiting list, at which time the petitioner will be granted deferred action or parole and discretionary EADs; and (4) U visa is issued, and the petitioner is statutorily entitled to EADs.  *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 248–49 (E.D.N.Y. 2021) (alterations added; citations omitted); *see also* BFD Policy Alert. Since 2009, USCIS has approved the statutorily authorized 10,000 U visas but given the many applications each year, thousands of applicants wait years on the waitlist for their turn.  (*See* FAC 5).

### B.  Plaintiffs' Claims and Procedural History

Plaintiffs are in various stages of the U-visa petition process.  (*See generally id.*).  Sixty-five of the 73 Plaintiffs are in the United States ("Domestic Plaintiffs");[6] the remaining eight are

---

[6] The Domestic Plaintiffs are Bruna Arenales-Salgado-de-Oliveira, Kaiqui Cardoso-Moreira, Lucca Carvalho-Assuncao, Henrique Coriliano-Yasbek, Matheus Correa, Vitor Cunha-de-Castro, Caio De-Albuquerque-Sobral, Carolina Freitas-Franco, Juan Felipe Munera, Roberto Noschese, Julia Gagliardi-Soares, Liliana Granada, Giovanna Mancini-Silva, Gabriel Oliveira-Cordeiro, Victoria Robledo-Pavliuk-Silva, Ana Romero, Joao Vitor Thompson-Dos-Santos, Pedro Martins-Bernabe, Gabriel Cruz-Carvalho, Giovanna Penchel-Alvarenga-dos Santos, Alessandra Arenales-Salgado-de-Oliveira, Murilo Arenales-

abroad ("Overseas Plaintiffs").[7]  (*See id.* ¶¶ 1–73).  Sixty-one[8] of the 65 Domestic Plaintiffs have

been placed on the U-visa waiting list and granted deferred action.  (*See id.* ¶¶ 144–294).  USCIS

has begun waiting list adjudications for the remaining four[9] and issued correspondence to each

requesting either additional evidence or appearance for biometrics collections.  (*See* Mot., Exs. A–

D [ECF Nos. 32-1–32-4]).  Of the eight Overseas Plaintiffs, USCIS has placed two[10] on the waiting

list and conditionally approved both for parole. (*See id.*, Exs. E–F [ECF Nos. 32-5–32-6]).  USCIS

---

Salgado-de-Oliveira, Luiz Waldemar Salgado-de-Oliveira, Nadia Cardoso-De-Miranda-Moreira, Sandro dos-Santos-Moreira, Cauan Cardoso-Moreira, Junia Gomes-de-Carvalho-de-Assuncao, P.C.A., Adelaide Correa, Edmar Correa, G.C., Manuela Cunha-da-Castro, J.P.C.C.A, Daniela Lemos-da-Cunha, Marco Antonio Cassiano-Alves, Erika Freitas-Franco, Flavia Gagliardi-Soares, G.G.S., Ricardo Almeida-da-Rocha-Filho, Jose Hoyos, Cinthya Cassab-Mancini-da-Silva, Santiago Munera-Giraldo, Miryam Janneth Giraldo-Uribe, Juan David Munera-Patino, J.M.G., Adriana Noschese, Renato Noschese, Maria do-Carmo-de-Oliveira-Cordeiro, Alan Pereira-Cordeiro, Maricelma Robledo-Pavliuk-Silva, Marcos Evandro Pavliuk-Silva, Julio Cesar Silveira, Sandra Munera, Mariluza Favorett-Thompson-dos-Santos, Fabio Dos-Santos, Pedro Henrique Thompson-Dos-Santos, Hilton Souza-Bernabe, Simone Sintia Mendes-Martins-Bernabe, Manuela Martins-Bernabe, Mairon Rego-Carvalho, Ana Paula Cruz-Carvalho, G.C.C., G.C.C., Herik Balthar-Ribeiro-Dos-Santos, and Giselle Penchel Alvarenga Dos Santos.  (*See* FAC ¶¶ 1–73).

[7]  The Overseas Plaintiffs are Rodrigo Adler-de-Assuncao; Heliani Valentina Coriliano, Cesar Roberto Yasbek, S.M.M., J.D.M.J., Ana Cristina Bracho-Portas, Maria del Pilar Portas, and Maria Fernanda Bracho-Portas.  (*See* FAC ¶¶ 11, 14–15, 41–42, 59–61).

[8]  These are Bruna Arenales-Salgado-de-Oliveira, Kaiqui Cardoso-Moreira, Lucca Carvalho-Assuncao, Henrique Cariliano-Yasbek, Matheus Correa, Vitor Cunha-de-Castro, Caio De-Albuquerque-Sobral, Carolina Freitas-Franco, Julia Gagliardi-Soares, Liliana Granada, Giovanna Mancini-Silva, Juan Felipe Munera, Roberto Noschese, Gabriel Oliveira-Cordeiro, Victoria Robledo-Pavliuk-Silva, Ana Romero, Joao Vitor Thompson-Dos-Santos, Pedro Martins-Bernabe, Gabriel Cruz Carvalho, Alessandra Arenales-Salgado-de-Oliveira, Murilo Arenales-Salgado-de-Oliveira, Luiz Waldemar Salgado-de-Oliveira, Nadia Cardoso-De-Miranda-Moreira, Sandro dos-Santos-Moreira, Cauan Cardoso-Moreira, Junia Gomes-de-Carvalho-de-Assuncao, P.C.A., Adelaide Correa, Edmar Correa, G.C., Manuela Cunha-da-Castro, J.P.C.C.A, Daniela Lemos-da-Cunha, Marco Antonio Cassiano-Alves, Erika Freitas-Franco, Flavia Gagliardi-Soares, G.G.S., Ricardo Almeida-da-Rocha-Filho, Jose Hoyos, Cinthya Cassab-Mancini-da-Silva, Santiago Munera-Giraldo, Miryam Janneth Giraldo-Uribe, Juan David Munera-Patino, J.M.G., Adriana Noschese, Renato Noschese, Maria do-Carmo-de-Oliveira-Cordeiro, Alan Pereira-Cordeiro, Maricelma Robledo-Pavliuk-Silva, Marcos Evandro Pavliuk-Silva, Sandra Munera, Mariluza Favorett-Thompson-dos-Santos, Fabio Dos-Santos, Pedro Henrique Thompson-Dos-Santos, Hilton Souza Bernabe, Simone Sintia Mendes Martins, Manuela Martins Bernabe, Mairon Rego Carvalho, Ana Paula Cruz Carvalho, G.C.C., and G.C.C.

[9]  These are Julio Cesar Silveira, Giovanna Penchel Alvarenga Dos Santos, Giselle Penchel Alvarenga Dos Santos, and Herik Balthar Ribeiro Dos Santos.  (*See* FAC ¶¶ 266, 295–299).

[10]  The two areRodrigo Adler-de-Assuncao and Cesar Roberto Yasbek.

has started waiting list adjudications for the remaining six[11] and issued correspondence to each requesting either additional evidence or appearance for biometrics collections. (*See id.*, Exs. G–L [ECF Nos. 32-7–32-12]).

Plaintiffs bring three claims for relief, which differ based on the Plaintiffs' status. (*See generally* FAC). Those who have received a waiting list determination, *i.e.*, the 61 Domestic Plaintiffs and two Overseas Plaintiffs, and those who will receive such a determination during the pendency of the case, bring two claims under the Administrative Procedure Act ("APA"), 5 U.S.C. section 706: arbitrary and capricious denial of waiting list parole ("Count I") (*see id.* ¶¶ 309–17), and unlawfully withholding waiting list parole ("Count II") (*see id.* ¶¶ 318–35). Those who have not received a waiting list decision, *i.e.*, the four Domestic Plaintiffs and six Overseas Plaintiffs, assert claims under the APA for unlawful withholding of waiting list decisions ("Count III"). (*See id.* ¶¶ 336–44). Defendants now move to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state claims upon which relief can be granted. (*See generally* Mot.).

## II. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). When a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff, as the party invoking the authority of a federal court to seek relief, bears the burden of establishing jurisdiction. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may present a facial or a factual attack to

---

[11] These are Heliani Valentina Coriliano, S.M.M., J.D.M.J., Ana Cristina Bracho-Portas, Maria del Pilar Portas Fernandez, and Maria Fernanda Bracho-Portas.

subject-matter jurisdiction.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

"Facial attacks" to a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (alterations adopted; quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion — the court must consider the allegations of the complaint to be true." *Id.* (citation omitted).  In contrast, district courts confronted with a factual challenge under Rule 12(b)(1) "may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted).

**B.  Failure to State a Claim**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable

for the misconduct alleged." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (alteration added; citing *Iqbal*, 556 U.S. at 678).

Courts evaluating motions to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.  DISCUSSION

The Government argues the Court lacks subject-matter jurisdiction over many of Plaintiffs' claims and the Amended Complaint fails to state a claim upon which relief can be granted.  (*See generally* Mot.).  Before turning to the merits, the Court begins, as it must, with an examination of its subject-matter jurisdiction.

#### A.  Subject-Matter Jurisdiction

"Article III of the Constitution limits the jurisdiction of federal courts to the consideration of 'Cases' and 'Controversies.'" *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (quoting U.S. Const. art III, § 2).  This requirement "imposes on federal courts a 'dual limitation' known as 'justiciability.'"  *Id.* (citation omitted).  "The doctrine of justiciability prevents courts from encroaching on the powers of the elected branches of government and guarantees that courts consider only matters presented in an actual adversarial context." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (citation omitted).

The "case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quoting *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011); footnote call number omitted).  "[R]ipeness and mootness are fundamentally temporal — ripeness asks whether

it's too soon, mootness whether it's too late[.]"  *Id.* at 1337 (alterations added; citation omitted).

A case must be ripe to prevent "federal courts from engaging in speculation or wasting their

resources through the review of potential or abstract disputes." *Harrell v. Fla. Bar*, 608 F.3d 1241,

1257–58 (11th Cir. 2010) (quotation marks and citation omitted).  Mootness arises where a case

"no longer presents a live controversy with respect to which the court can give meaningful relief."

*Christian Coal. of Fla., Inc.*, 662 F.3d at 1189 (quotation marks and citation omitted).

The Government makes three justiciability arguments.  It argues that (1) two Overseas

Plaintiffs' claims in Count I are moot because the Department of State granted them conditional

parole (*see* Mot. 11–12); (2) the remaining six Overseas Plaintiffs' claims in Count I are not ripe

because USCIS issued requests for additional evidence or biometrics (*see id.* 14–15); and (3) all

Plaintiffs' claims in Count III are moot because the Government has taken some adjudicative

action on each Plaintiff's application (*see id.* 16–17).  Plaintiffs disagree on all grounds.  (*See

generally* Resp.).  The Court addresses the parties' competing positions in turn.

   1. *Overseas Plaintiffs (Count I) — Mootness*

Since two Overseas Plaintiffs "have already been conditionally approved for parole[,]" the

Government argues their claims in Count I are moot; according to the agencies, the Court "can no

longer give [these Plaintiffs] meaningful relief."  (Mot. 11 (alterations added; quoting *Jews for

Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998))).  Plaintiffs

insist they seek a different type of parole— *waiting list* parole, granted by USCIS instead of DOS.

(*See* Resp. 5).  They also maintain conditional parole "violates [section] 214.14(d)(2)[.]"  (*Id.* 6

(alterations added)).  The Government insists that "Plaintiffs' preference for a different process

does not affect the mootness of this case[,]" and Plaintiffs have not demonstrated entitlement to

such different process.  (Reply 6 (alteration added)).  The Government fails to persuade.

"A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever to the prevailing party.'"  *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); other quotation marks and citations omitted).  "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'"  *Id.* at 307–08 (alteration adopted; quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984)).  *Compare Al Najjar*, 273 F.3d at 1339–40 (issuance of mandate affirming a deportation order mooted a claim for bond because the mandate provided the Attorney General the "unfettered power to detain" the petitioner) *with Knox*, 567 U.S. at 307–08 (claim challenging notice and fee assessments was not mooted during litigation by issuance of a new notice providing for a full refund of the challenged fees, because the plaintiffs maintained the new notice was improper, meaning the controversy was still "live").

Relevant here, the "prospects of success are [] not pertinent to the mootness inquiry."  *Chafin v. Chafin*, 568 U.S. 165, 174 (2013) (alteration added).  Consequently, when a party's mootness argument centers on the "meaning of" the applicable law or the "availability of a certain kind of relief[,]" the argument "confuses mootness with the merits."  *Id.*; *cf. Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661, 666 (1974) (dismissal of claims for lack of subject-matter jurisdiction is proper where claims are "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy" (alteration added; citations omitted))

The Government makes the fatal mistake of "confusing mootness with the merits."  *Chafin*, 568 U.S. at 174.  As Plaintiffs put it, they "do not seek *conditional* parole from the DOS.  They seek mandatory, waiting list parole issued by USCIS."  (Resp. 5).  Whether or not they have

"shown that they are entitled to th[is] different process" (Reply 6 (alteration added)) is beside the point. Plaintiffs have not received all the relief they seek and insist the Government's actions are improper under the governing law. (*See generally* FAC; Resp.). In short, Plaintiffs' claims are still "'embedded in an[] actual controversy about the[ir] . . . particular legal rights.'" *Soomro v. Jaddou*, No. 21-3042-Civ, 2023 WL 6533515, at *1 (D.S.C. Sept. 6, 2023) (alteration added; quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Consequently, the Government's provision of conditional parole to two Overseas Plaintiffs does not bar their claims in Count I.

    2. *Overseas Plaintiffs (Count I) — Ripeness*

As to the other six Overseas Plaintiffs who have not received waiting list determinations, the Government argues their claims are not ripe because "there has been no consideration or denial of parole[.]" (Mot. 15 (alteration added)). According to Plaintiffs, the issuance of waiting list decisions and waiting list parole occurs simultaneously, such that the two types of relief are "inseparable." (Resp. 7).

Plaintiffs' argument is perplexing. To even be considered for waiting list parole, a petitioner must first receive a *favorable* waiting list decision. *See* 8 C.F.R. § 214.14(d)(2). USCIS's practice of granting waiting list parole at the same time as a favorable waiting list decision does not obviate the need for the prerequisite — placement on the waiting list. Thus, these Plaintiffs' claims "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all[.]" *Texas v. United States*, 523 U.S. 296, 300 (1998) (alterations added; quotation marks and citations omitted). In short, "[b]ecause the [six Overseas P]laintiffs are not on the U-visa waiting list and [] are not yet eligible for parole under [section] 214.14(d)(2), th[eir] claim[s are] not ripe for judicial review." *Bautista v. Cuccinelli*, No. 20-cv-339, 2020 WL 13033218, at *2 (M.D.N.C. Oct. 28, 2020) (alterations added; citing *Nat'l Park Hosp. Ass'n v.*

*Dep't of the Interior*, 538 U.S. 803, 807–08 (2003)).   Consequently, as to these six Overseas Plaintiffs, Count I is dismissed for lack of subject-matter jurisdiction.

### 3. *Domestic Plaintiffs (Count III) — Mootness*

The Government's final justiciability argument is directed to Count III.  (*See* Mot. 16–17). The Government argues any claim for unlawfully withheld agency action is moot once the Government begins the adjudicative process, and here, USCIS "issued correspondence requesting additional evidence or appearance for the collection of biometrics" for each of the four Domestic Plaintiffs who have not yet received waiting list decisions.  (*Id.* 16 (citations omitted)).  Thus, the Government contends, any claim seeking to compel agency action is moot.  (*See id.*).

Plaintiffs insist the Court can still provide meaningful relief, because they seek "finished adjudications[.]" (Resp. 8 (alteration added)).  Plaintiffs maintain the Court can order the agencies to reach final decisions or at least reach final decisions within a set time after Plaintiffs respond to the Government's information requests.  (*See id.*).  The Court agrees with Plaintiffs.

Admittedly, myriad courts have held that immigration claims to compel agency action are moot "once the agency begins to spin its bureaucratic cogs toward decision." *Markandu v. Thompson*, No. 07-cv-4538, 2008 WL 11510675, at *3 (D.N.J. June 11, 2008) (collecting cases). This is especially true when an agency takes action that puts the "ball [] in [a plaintiff's] court[.]" *Meixian Ye v. Kelly*, No. 17-cv-3010, 2017 WL 2804932, at *1 (E.D.N.Y. June 28, 2017) (alterations added; quotation marks omitted); *see also Yusupov v. Mayorkas*, No. 21-cv-4066, 2021 WL 6105720, at *2 (E.D.N.Y. Dec. 23, 2021) (dismissing, on mootness grounds, suit seeking to compel USCIS to adjudicate adjustment of status application where agency decision had not issued but USCIS had requested an interview).

Ostensibly, the reasoning behind these decisions is two-fold.  Courts emphasize that the

agency's movement on the plaintiffs' claims "eliminat[es] the inaction predicate for an undue delay claim[.]" *Bokhari*, 2023 WL 5283898, at *2 (alterations added).  Courts also appear wary of interfering with or overseeing the agency process.  *See Meixian Ye*, 2017 WL 2804932, at *2 ("[T]his Court is not going to keep the case open based on plaintiff's desire to have a judicial overseer of her administrative process." (alterations added)).

Nonetheless, "[c]ourts have been reluctant to find mootness in situations where the court could still effectuate a partial remedy or provide some form of meaningful relief."  *Serrar v. Sec'y, Dep't of Homeland Sec.*, No. 12-cv-1714, 2013 WL 12323968, at *4 (M.D. Fla. Aug. 9, 2013) (citing *Ala. Disabilities Advocacy Program v. J.S. Tarwater Dev. Ctr.*, 97 F.3d 492, 496 (11th Cir. 1996); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).  Here, the Court is not convinced that USCIS's movement on some petitions deprives the Court of the power to grant these Plaintiffs effectual relief.[12]  As Plaintiffs articulate, the Court could certainly order the Government to finalize adjudications of these Plaintiffs' petitions within a set time.  (*See* Resp. 8); *see also Solis v. Cissna*, No. 18-cv-00083, 2019 WL 8219790, at *18 (D.S.C. July 11, 2019) (concluding USCIS unreasonably delayed adjudicating petitioners' U-visa waitlist eligibility and ordering USCIS to adjudicate the same within 30 days).  Consequently, Count III is not moot.

Having concluded it has subject-matter jurisdiction over some claims under each Count, the Court addresses the Government's contention that the First Amended Complaint fails to state a claim upon which relief can be granted.

**B.  Failure to State Claims for Relief**

Plaintiffs' claims all arise under the APA, 5 U.S.C. section 706(1).  (*See generally* FAC).

---

[12] Further, it appears the deadlines for these Plaintiffs to respond to the requests for evidence has passed (*see generally* Mot., Exs. G–L), meaning the ball is no longer in their court, *see Meixian Ye*, 2017 WL 2804932, at *1.

Under the APA, an agency must adjudicate "a matter presented to it" within a "reasonable time[.]" 5 U.S.C. § 555(b) (alteration added).  If an agency fails to do so, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed[.]"  *Id.* § 706 (alteration added); *see also id.* § 702.  District courts only possess power to compel unlawfully withheld or unreasonably delayed agency action "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 877–78 (11th Cir. 2009) (emphasis in original; quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

### 1.  Claims Against the Department of State

The Government seeks dismissal of claims against DOS, arguing Plaintiffs lodge no claims against DOS and do not allege any wrongdoing by it, save for an allegation that USCIS has unlawfully given DOS discretion to deny conditional parole.  (*See* Mot. 17–18).  In the Government's view, "DOS only performs the ministerial task of additional screening on behalf of USCIS and issuing an appropriate document to facilitate travel due to USCIS'[s] limited presence internationally."  (*Id.* 18 (alteration added; footnote call number omitted)).

Plaintiffs devote a single, brief paragraph to defend their claims against DOS.  (*See* Resp. 9).  They state they "do not think DOS should be part of [the parole] process, but USCIS has built DOS into the [waiting list parole] process by" instituting requirements that require DOS's involvement; they also assert that DOS is the agency that issues waiting list parole.  (*Id.* 9 (alterations added)).  Thus, according to Plaintiffs, the Court "could not provide effective relief to Plaintiffs" without DOS, which Plaintiffs describes as "a necessary party[.]"  (*Id.* (alteration added)).  Plaintiffs provide no citation or authority to support their assertions and otherwise fail to persuade.

USCIS is indisputably the agency with authority to decide whether to grant Plaintiffs parole. (*See* Mot. 17–18; Resp. 9; Reply 8–9). The Court is thus able to "accord complete relief" to Plaintiffs in DOS's absence. *Cf. Ali v. Swacina*, No. 15-cv-61820, 2015 WL 8610535, at *3 (S.D. Fla. Dec. 14, 2015) (in action seeking review of denial of naturalization application, allowing "case to proceed against only those officials with the authority to naturalize persons as citizens" (citation omitted)).[13] Lacking any additional justification from Plaintiffs as to why DOS should remain in this action (*see generally* Resp.), the Court dismisses all claims against DOS. The Court now considers whether the Amended Complaint states a claim against USCIS.

### 2. Counts I and II — Entitlement to Waiting List Parole

Recall that in Count I, Plaintiffs allege the Government arbitrarily and capriciously denied waiting list parole; and in Count II, they allege the Government has unreasonably withheld or delayed waiting list parole. (*See* FAC ¶¶ 309–335). The Government contends both Counts should be dismissed for failure to state claims upon which relief can be granted, because Plaintiffs are not entitled to waiting list parole. (*See* Mot. 8–11, 15). Plaintiffs insist otherwise, arguing the Government misinterprets the statutory and regulatory scheme. (*See* Resp. 1–5). The Court agrees with the Government.

The parties' positions hinge on the interpretation and interaction of different regulations. (*See generally* Mot.; Resp.). The Court interprets regulations as it interprets statutes, beginning with their text and ending the analysis there if the text is clear. *See Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020) (citation omitted); *see also Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1369–70 (11th Cir. 2019) ("If our review of the regulatory language unambiguously answers the question at issue, that is the end of the matter[.]" (alteration

---

[13] In any event, the only claims DOS would be arguably "necessary" for are claims for waiting list parole. For reasons explained, those claims fail.

added; citation omitted)).  In reading a regulation's text, a court looks to the "common usage or ordinary meaning" of "the actual language used[.]"  *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223–24 (11th Cir. 2001) (alteration added); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) ("A regulation should be construed to give effect to the natural and plain meaning of its words." (quotation marks and citation omitted; alteration adopted)).  Courts must also look to "the particular context in which that language appears," *Landau*, 925 F.3d at 1369, "giv[ing] effect, if possible, to every clause and word of" the regulation, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (alteration added; quotation marks and citation omitted), and not "strain[ing the] ordinary rules of grammar[,]" *Med. Transp. Mgmt. Corp. v. Comm'r of IRS*, 506 F.3d 1364, 1369 (11th Cir. 2007) (alterations added).

   With these interpretive principles in mind, the Court turns to the parties' positions.  The Government's interpretation derives from 8 C.F.R. section 214.14(d)(2), which provides that "USCIS will grant deferred action *or* parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list."  *Id.* (emphasis added).  From the Government's perspective, it may choose between deferred action and parole, and, in Plaintiffs' cases, it permissibly chose the former.  (*See* Mot. 8–11).

   Plaintiffs interpret section 214.14(d)(2) differently, arguing the use of "will" makes both deferred action *and* parole "mandatory."  (Resp. 4).  Frankly, Plaintiffs' reading defies the rules of grammar, ordinary language, and syntax.   True, the word "will" — like the word "shall" — indicates imposition of a mandatory condition.  *See Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1233 (S.D. Fla. 2023) (collecting definitions of "will") (citing *Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (describing "shall," "will," and "must" as "language of an unmistakably mandatory character")).  Nevertheless, use of the term "or" is "almost always

disjunctive." *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quotation marks and citations omitted); *Johnson v. Flagler Cnty. Sch. Dist.*, 628 F. Supp. 3d 1167, 1183 (M.D. Fla. 2022) (citing *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (citations omitted) (stating that while statutory context can overcome the ordinary, disjunctive meaning of "or," context favors its ordinary disjunctive meaning)).

On its face, section 214.14(d)(2) can only be read one natural way: it mandates *either* advanced parole *or* deferred action, but not both, leaving USCIS a choice. At least one court has reached the same conclusion. *See Argueta v. Jaddou*, No. 23-cv-3002, 2023 WL 8082113, at *7 (D. Neb. Nov. 21, 2023) ("Contrary to Plaintiffs' contention, USCIS is not required to grant deferred action and parole to waiting list members; rather, USCIS need only grant one or the other."). In support of a contrary interpretation, Plaintiffs cite the Ombudsman Parole Recommendation, which states merely that "USCIS *should* afford parole to eligible U petitioners" by adopting certain parole policies. (Resp. 4 (emphasis added; quotation marks and citation omitted)). Nothing in the Ombudsman Parole Recommendation suggests parole is required by law. (*See generally* Ombudsman Parole Recommendation). And Plaintiffs cite no other authority to demonstrate that the Court should cast aside the ordinary, disjunctive meaning of "or." (*See generally* Resp.).

Plaintiffs also lodge two alternative arguments. First, they argue another regulation requires parole: 8 C.F.R. section 212.5(f). (*See id.* 2–4). Section 212.5(f) provides that "[w]hen parole is authorized for an alien who will travel to the United States without a visa, the alien shall be issued an appropriate document authorizing travel." *Id.* (alteration added).[14] In Plaintiffs' view,

---

[14] Distilling Plaintiffs' argument from their briefing is rather difficult. Plaintiffs waffle between taking the stance that parole is "mandatory" under section 214.14(d)(2) and thereby "authorized" under section 212.5(f), or simply "authorized" by section 214.14(d)(2), which makes it required under section 212.5(f). (*See* Resp. 1–5).

even if section 214.14(d)(2) gives the Government a choice, the regulation at least "authorize[s]" parole, so Plaintiffs "shall be issued an appropriate document authorizing travel[,]" *i.e.*, advance parole. 8 C.F.R. § 212.5(f) (alterations added). Second, Plaintiffs contend that even if parole is discretionary, USCIS has made it "mandatory through notice and comment rulemaking[.]" (Resp. 4 (alteration added)).

The Government maintains that Plaintiffs' reading of section 212.5(f) is "contrary to the common usage of the word 'authorized'" which requires a "grant[] by USCIS." (Reply 2 (alteration added)). Further, the Government argues section 212.5(f) is a "procedural mechanism" as opposed to a "substantive provision requiring [the Government] to provide travel documents to large groups of noncitizens." (*Id.* 4 (alteration added; citation omitted)). The Government again emphasizes the disjunctive in section 214.14(d)(2) and presses that Plaintiffs' reading of 212.5(f) would "transform [section] 214.14(d)(2)'s disjunctive 'or' into a conjunctive 'and[.]'" (Reply 4 (alterations added; citation omitted)). In any event, the Government insists, no regulatory or rulemaking authority can overcome the discretionary nature of parole contained in the authorizing statute. (*See id.* 5–6). Some of these arguments miss the mark, but the Court ultimately agrees parole is not mandatory here.

Although the decision to grant or deny parole is plainly discretionary, *see Alonso-Escobar v. USCIS Field Case Off. Dir. Miami, Fla.*, 462 F. App'x 933, 935 (11th Cir. 2012); contrary to the Government's assertion, an agency can render an otherwise discretionary decision mandatory via rulemaking, policy, or some settled course of adjudication, *see Patel v. U.S. Att'y Gen*, 971 F.3d 1258, 1268 (11th Cir. 2020) (citations omitted) (explaining the Congressional delegation of discretionary authority to the Attorney General, the tools to effectuate that authority, and ways in which that discretion can be fettered by use of those tools, such as regulations). Nevertheless, the

regulations here do not demonstrate that USCIS has fettered its discretion in the way Plaintiffs suggest; instead, read together in context, the regulations reveal that "authorized" means via individual determinations by USCIS, as the Government contends.  The Court explains.

First, Plaintiffs' reading makes little sense when their interpretation of the text is examined at a micro level.  In their view, parole is authorized by section 214.14(d)(2), so advance parole is required under section 212.5(f).  But simultaneously, they urge that advance parole and parole are one and the same (*see* Resp. 2 ("parole *is* advance parole" (emphasis in original))) — an interpretation that is not without support, *see Samirah*, 627 F.3d at 658–59.  When one inserts Plaintiffs' definition into section 212.5(f), it reads: "[w]hen parole is authorized for an alien who will travel to the United States without a visa, the alien shall be [given parole.]" 8 C.F.R. § 212.5(f) (alterations added)).  In other words, Plaintiffs believe "when parole is authorized, parole shall be given."  (Resp. 2–3).  This interpretation of section 212.5(f) renders the "or" in section 214.14(d)(2) meaningless, as it deprives USCIS of its choice between parole and deferred action. *See United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) ("A statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage." (quotation marks and citation omitted)).

Examining Plaintiffs' reading of section 212.5(f) at a macro level yields even more concerning — and absurd — results.  Implicitly, Plaintiffs believe "authorized" means "allowed" or "permitted."  This interpretation aligns with the standard definition of "authorized" which can mean "permit by" a "regulating power[.]"   *Authorize*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/authorize (last visited Jan. 2, 2024) (alteration

added).[15]  Recall that 8 U.S.C. section 1182(d)(5) authorizes the Attorney General to grant parole.

Taking Plaintiffs' reading of section 212.5(f) literally, parole is "authorized" for anyone who

qualifies under section 1182(d)(5), making parole mandatory under section 212.5(f).  This would

effectively eviscerate the agency's discretion to grant parole.  Surely, that cannot be the case.  *See*

*Durr v. Shinseki*, 638 F.3d 1342, 1344 (11th Cir. 2011) ("Taken as literally as he would have us

read it, however, that language would lead to an absurd result, and the law tries to avoid absurd

results.").

     The Court's aim is reconcile sections 214.14(d)(2) and 212.5(f) and view the regulations

"harmoniously, as a whole," giving "each part [] a sensible and intelligent effect[.]"  *Shotz v. City*

*of Plantation*, 344 F.3d 1161, 1173 (11th Cir. 2003) (alterations added; quotation marks and

citations omitted).  Doing this leads to only one conclusion: "authorized" in section 212.5(f) means

via individualized determinations by USCIS — in this case, after it chooses between deferred

action or parole under section 214.14(d)(2).

     Since Plaintiffs are not entitled to parole via section 214.14(d)(2), section 212.5(f), or

otherwise, their claims in Counts I and II fail and must be dismissed.

### 2. *Count III — Unlawful Withholding of Waiting List Adjudications*

     Remaining is Count III, under which the Plaintiffs who have not yet received waiting list

decisions claim USCIS is unlawfully withholding the waiting list adjudications, in violation of the

APA.  (*See* FAC ¶¶ 336–44).  Besides its already-rejected mootness arguments, the Government's

"analysis" regarding dismissal of Count III is cursory at best and largely relegated to a footnote in

the Reply.  (*See* Reply 8 n.3; *see also* Mot. 2).  First, the Government contends the Amended

---

[15] The Government is wrong that Plaintiffs' definition of authorized is "contrary to the common usage of
the term[.]"  (Reply 2 (alteration added)).  Based on the "common usage" of the word (*id.*), it is certainly
possible for a regulation to authorize action.

Complaint only asserts claims of unlawful withholding — not unreasonable delay, and that Plaintiffs are now attempting to impermissibly "amend their claims in an opposition[.]" (Reply 8 n.3 (alteration added; citation omitted)). Second, the Government argues — without a single citation to authority — that "Plaintiffs have failed to state a claim for which relief can be granted under [Rule 12(b)(6)] because they have not alleged facts substantiating that USCIS has unreasonably delayed the adjudicative processing." (*Id.*; *see also* Mot. 2). For the most part, these arguments are raised for the first time in a reply brief and are thus "not properly before" the Court. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quotation marks omitted; collecting cases). Nevertheless, the Court briefly addresses the Government's contentions.

As an initial matter, the Court is not persuaded Plaintiffs have impermissibly amended their claims. "Section 706(1) of the APA commands the federal courts to 'compel agency action unlawfully withheld *or* unreasonably delayed.'" *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 453 (6th Cir. 2022) (emphasis in original; quoting 5 U.S.C. § 706(1)). The only "distinction between agency action 'unlawfully withheld' and 'unreasonably delayed' turns on whether Congress imposed a date-certain deadline on agency action." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999) (citation omitted). Thus, if any agency fails to comply with a statutory deadline, "a reviewing court must compel the action unlawfully withheld[,]" whereas more generalized delay when no statutory deadline exists leaves a reviewing court with "discretion to decide whether agency delay is unreasonable." *Id.* at 1190 (alteration added).

Admittedly, Plaintiffs describe Count III as a claim based on USCIS "unlawfully withholding waiting list decisions[.]" (FAC ¶ 337 (alteration added)). But throughout the pleading — including in Count III — Plaintiffs make clear their claim is based on the

Government's delay in adjudicating some Plaintiffs' U-visa petitions. (*See id.* ¶ 77 (identifying basis for federal question jurisdiction as arising under section 706(1) of the APA "for unlawful withholding and unreasonable delays"); *id.* ¶¶ 80, 114 n.3, 352 (referencing delays in waiting list decisions); *id.* ¶ 344 (in Count III, identifying adjudication delays as "substantially unjustified")). It appears the use of "unlawful withholding" may have been a simple, albeit largely irrelevant, misnomer. But collectively, Plaintiffs' allegations are more than sufficient to put the Government on notice of their claim. The Government's feigned surprise at Plaintiffs' references to unreasonable delay is, simply put, unconvincing.

Second, the Court is not persuaded that Plaintiffs have failed to sufficiently allege the delays were unjustified. Indeed, the Government makes no attempt to identify any specific defects in Plaintiffs' unreasonable delay claims. (*See* Reply 8 n.3; Mot. 2).[16] As the movant asserting the Plaintiffs' failure to state a claim, the Government "bears the burden to show that the complaint should be dismissed." *Belitto v. Snipes*, 221 F. Supp. 3d 1354, 1359 (S.D. Fla. 2016) (quotation marks and citations omitted). If the movant does not "provide legal authority in support of its arguments, it has failed to satisfy its burden[.]" *Id.* (alteration added; quotation marks and citations omitted). Lacking any real argument from the Government as to why the delays here are

---

[16] To assess whether agency delay is reasonable, courts often rely on a six-factor balancing test set forth in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). *See, e.g.*, *Barrios Garcia*, 25 F.4th at 451–52 (applying *TRAC* factors to claims of unreasonable delay in adjudicating U-visa petitions). The Eleventh Circuit has not expressly adopted the *TRAC* factors, but they are widely used by district courts in this Circuit and other Circuits. *See Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1287 (S.D. Fla. 2023) (collecting cases). Some courts, however, have declined to use the *TRAC* factors at the motion-to-dismiss stage given the "fact-intensive nature of unreasonable delay cases." *Lammers v. USCIS*, No. 21-cv-668, 2021 WL 9408916, at *2–3 (M.D. Fla. July 28, 2021) (declining to apply factors in the EB-5 context). The Government does not discuss the *TRAC* factors or any other method for assessing whether the delays here are reasonable, nor does it cite a single case in support of its contention that Plaintiffs have not adequately alleged unreasonable delay. (*See generally* Mot.; Reply).

reasonable under any analytical framework, the Court will not dismiss Count III.[17]

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, Ur Jaddou, Director, United States Citizenship and Immigration Services and Antony Blinken, Secretary, United States Department of State's Motion to Dismiss First Amended Complaint **[ECF No. 32]** is **GRANTED in part** and **DENIED in part**.  Count I and Count II are **DISMISSED**, leaving only Count III, brought by Julio Cesar Silveira, Giovanna Penchel Alvarenga Balthar dos Santos, Herik Balthar Ribeiro Dos Santos, Giselle Penchel Alvarenga Dos Santos, Ana Cristina Bracho-Portas, Maria del Pilar Portas, and Maria Fernanda Bracho-Portas.

Given the narrowing of the issues remaining, the parties are directed to contact Magistrate Judge Jared M. Strauss for a renewed settlement conference, to be held within 30 days of the date of this Order.  Should the parties fail to reach agreement, they will be given a deadline to file motion(s) for summary judgment.

**DONE AND ORDERED** in Miami, Florida, this 5th day of January, 2024.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[17] Notably, some Plaintiffs' U-visa petitions have been pending between three and four years.  (*See, e.g.*, FAC ¶¶ 297, 304; *cf. id.* ¶ 266 (not stating a U visa application date for Plaintiff Julio Cesar Silveira)).  In like circumstances, courts have found sufficient plaintiffs' allegations of unreasonable delay when their U visa applications had been pending around five years.  *See, e.g.*, *Barrios Garcia*, 25 F.4th at 451–455.